■ West Midtown Management Group, Inc., Doing Business as West Midtown Medical Group, Appellant, v State of New York, Respondent. [38 NYS3d 119]—

Judgment, Supreme Court, New York County (Alexander W. Hunter, Jr., J.), entered October 14, 2014, which denied the CPLR article 78 petition seeking, inter alia, a judgment declaring that the principal sum to which respondent is entitled to seek repayment from petitioner under the final audit report dated June 16, 2010 (FAR) is no more than $1,460,914, and dismissed the proceeding, unanimously reversed, on the law, without costs, the petition granted, and it is declared that the principal sum that respondent is entitled to recover from petitioner pursuant to the FAR is $1,460,914.

Petitioner seeks to limit its Medicaid reimbursement overpayment liability, in connection with a final audit report issued by respondent Office of the Medicaid Inspector General (OMIG), to the "lower confidence limit" amount of $1,460,914 set forth in the FAR. The FAR states that, although OMIG did not waive any available remedies, if petitioner did not remit payment or arrange a payment plan within 20 days, OMIG would withhold a percentage of Medicaid billings to "liquidate the lower confidence limit amount." In the alternative, if petitioner challenged OMIG's findings at a hearing, OMIG would seek to recover at the hearing the FAR's higher point estimate of overpayments, which was $1,857,401.

Petitioner sought to challenge OMIG's findings at a hearing, but was denied the opportunity, because it failed to provide

OMIG with the required written notice of intent to seek a hearing within 60 days. Accordingly, OMIG commenced withholding by delivering the statutorily required written notice, stating the basis and duration of the withholding (18 NYCRR 518.7 [b], [c] [2]). On December 9, 2010, OMIG delivered written notice informing petitioner that withholding had commenced, as "an overpayment totaling $1,460,914.00 was identified," and that "[t]his withholding is temporary and will continue until such time as the balance due is recovered." In a telephone conversation on September 12, 2013, however, OMIG orally informed petitioner that it intended to continue withholding until the higher point estimate of $1,857,401 had been recovered.

Petitioner contends that the FAR and subsequent notice of withholding failed to provide adequate notice that, even in the absence of a hearing, OMIG intended to withhold the higher point estimate of $1,857,401. OMIG responds that petitioner's unsuccessful (because untimely) request for a hearing entitled OMIG to pursue the higher point estimate of $1,857,401. OMIG further contends that it is entitled to recoup the higher point estimate pursuant to the statement in the FAR that OMIG's withholding from payments to petitioner would "not bar[ ] any other remedy allowed by law" and pursuant to the reference in the subsequent notice of withholding to a "balance due" as determined by the FAR.

Initially, the petition is not barred by the four month statute of limitations applicable to article 78 proceedings. Where a party must receive written notice, the statute of limitations does not commence to run until written notice is received (*90-92 Wadsworth Ave. Tenants Assn. v City of N.Y. Dept. of Hous. Preserv. & Dev.*, 227 AD2d 331 [1st Dept 1996]). OMIG was required to provide petitioner, within five days of the commencement of the withholding, with a written notice advising petitioner of, among other matters, the duration of the withholding (18 NYCRR 518.7 [b], [c] [2]). The notice of withholding that OMIG provided to petitioner did not inform petitioner that the withholding would continue until OMIG had recouped principal equal to the FAR's higher point estimate of $1,857,401. Accordingly, the statute of limitations for petitioner to challenge OMIG's withholding of the higher point estimate of $1,857,401 has not yet commenced to run.

Turning to the merits, as previously noted, OMIG was required by law to provide petitioner with notice of the duration of the withholding from payments on its billings (18 NYCRR 518.7 [c] [2]). Pursuant to this obligation, OMIG

delivered a notice of withholding, dated December 9, 2010. This notice stated that "an overpayment totaling $1,460,914 was identified as a result of the above-referenced audit," and further stated that "[t]his withholding is temporary and will continue until such time as the balance due is recovered." Thus, the notice, read as a whole, indicated that the withholding would cease once the balance due, i.e., the identified overpayment of $1,460,914, was recouped.

The statement in the notice of withholding that the withholding "will continue until such time as the balance due is recovered" does not authorize OMIG to continue the withholding beyond the point at which $1,460,914 has been recovered. The reference to "the balance due," even in combination with the notice's reference to the FAR, did not give petitioner fair notice that OMIG intended to recoup the FAR's higher point estimate of $1,857,401 rather than the FAR's lower confidence limit amount of $1,460,914, since the notice expressly referred to $1,460,914 as the identified overpayment.

Any document, and particularly a document attempting to deliver statutorily required notice, should be interpreted according to its plain meaning, without distortion through undue emphasis on a particular phrase (*Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352, 358 [2003]). The plain meaning of the notice is that withholding will cease once the identified overpayment figure of $1,460,914, plus interest, has been recouped. $1,460,914 is the figure set forth in the notice as the basis for the intended withholding, and nothing in the FAR refers the reader to the FAR's higher point estimate of $1,857,401.

The dissent mistakenly interprets the FAR as informing petitioner that if there were no settlement within 20 days there would be "no other way that petitioner would have the right to claim entitlement to limit its liability to the lower amount." The actual FAR language states that, in the event a settlement is not reached within 20 days, OMIG will begin withholding "to recover payment and liquidate *the lower confidence amount*, interest, and/or penalty, not barring any other remedy at law" (emphasis added). FAR expressly states that if a settlement is not reached, OMIG will begin withholding to collect "the lower confidence amount" of $1,460,914. Thus, contrary to the dissent's interpretation, the FAR expressly states that in the event there is no settlement, OMIG will withhold the lower confidence limit.

The dissent further errs when interpreting the statement in the FAR that OMIG's withholding from payments to petitioner

based on the lower confidence limit amount will not "bar[ ] any other remedy allowed by law" as providing adequate notice that OMIG intended to recover the higher point estimate. The FAR stated that OMIG would seek to recover the higher point estimate in the event petitioner challenged the FAR's determination at a hearing but would otherwise recover the lower confidence limit amount. No hearing was ever held because petitioner's request for one was untimely. Accordingly, the operative clause in the FAR is the one specifying that the withholding would "liquidate the lower confidence limit amount."

Finally, the dissent, while analyzing at length whether or not OMIG forfeited its right to attempt to collect the higher point estimate, fails to address the dispositive issue, whether or not OMIG delivered the statutorily required notice. A fair reading of both the FAR and OMIG's formal notice of witholding leads to the inescapable conclusion that OMIG informed petitioner that it was withholding to recoup the lower confidence amount of $1,460,914, and failed to deliver written notice informing petitioner that it would continue withholding to liquidate the higher point estimate of $1,857,401. While the dissent agrees "that the notices did not notify petitioner that OMIG intended to recover the full overpayment," the dissent accuses us of imposing "limits on the agency that are not in the applicable laws and regulations" and ignoring the agency's right to recover the higher point estimate of $1,857,401, and thereby placing a Medicaid provider who does not settle in the same position as a provider who does settle. Contrary to the dissent's assertions, we express no view as to OMIG's right to continue pursuing the higher point estimate. We simply uphold the statute's requirement that regardless of the amount OMIG chooses to pursue, OMIG must first deliver the statutorily required notice. As the dissent admits, OMIG failed to provide the required notice. Accordingly, OMIG is statutorily barred from collecting the higher point estimate, and is therefore limited to recouping the lower confidence limit amount of $1,460,914, plus interest. Concur—Friedman, J.P., Acosta and Webber, JJ.

Saxe and Gische, JJ., dissent in a memorandum by Saxe, J., as follows: Petitioner, a Medicaid provider, received substantial payments from Medicaid for services that an audit determined did not qualify for payment. The manner in which respondent agency reached its conclusion regarding the amount due was fully explained by the agency's final audit report issued June 10, 2010. The report also offered petitioner the option to settle for a lower set amount or to request a hearing. Although

petitioner did not avail itself of either offered option, it nevertheless claims that the agency must be limited to collecting only the lower, settlement offer amount, and the majority agrees. Because in my view petitioner's submissions fail to establish any right on petitioner's part to pay less than the full assessed amount, I would affirm the motion court's dismissal of the petition.

The Office of the Medicaid Inspector General (OMIG) is the entity within the New York State Department of Health (DOH) that is charged with Medicaid fraud and abuse prevention and the recovery of improperly expended medical assistance funds (see Public Health Law §§ 30-36). After conducting a routine audit of petitioner's claims for Medicaid payments covering the period from January 1, 2003 through December 31, 2007, it issued a draft audit report concluding that DOH had made several million dollars in unjustified Medicaid payments to petitioner during the five-year audit period. After giving petitioner a review period, OMIG issued the June 16, 2010 final audit report.

The final audit report assessed that petitioner had received overpayments of $1,857,401, based on extrapolations from a sampling of claims (the "extrapolated point estimate"), a method of calculation specifically authorized by controlling regulations (see 18 NYCRR 519.18 [g]; Matter of Vaynshelbaum v Dowling, 237 AD2d 132 [1st Dept 1997]). According to the report, statistical analysis of the same random sample also gave rise to the "lower confidence limit," i.e., the probable lower limit of the overpayment amount, determining that "[t]he lower confidence limit of the amount overpaid is $1,469,914." Based on these amounts, the final audit report informed petitioner that it had the right to settle at the lower confidence limit amount either by paying that amount within 20 days or by entering into a repayment agreement within 20 days. *There was no other way that petitioner would have the right to claim entitlement to limit its liability to the lower amount.* In the alternative, petitioner also had the option to request an administrative hearing to challenge the calculations, at which OMIG would have the right to seek, and defend, the full assessed amount of $1,857,401. To do so, petitioner had to request a hearing, in writing, within 60 days of the date of the report.

Finally, the final audit report explained that if petitioner did not enter into a settlement within 20 days, as offered, OMIG would begin withholding 50% of petitioner's Medicaid billings "to recover payment and liquidate the lower confidence limit amount, interest and/or penalty, *not barring any other remedy*

*allowed by law*" (emphasis supplied). In addition, the cover letter to the report emphasized that "[i]n addition to recovering the overpayments . . . OMIG reserve[d] the right to take additional actions," and that if it determined to take such additional action, it would notify petitioner in a separate notice.

On July 2, 2010, petitioner's counsel contacted OMIG by email, stating, "I anticipate that we will be requesting a hearing and will let you know within the 60 day period provided," implicitly declining to settle at the lower confidence limit amount. However, petitioner failed to make the requisite written request for a hearing within the 60-day period.

As the final audit report had indicated, on July 12, 2010 OMIG sent petitioner a notice that it would begin withholding 50% of its Medicaid billings to recover the lower confidence limit amount. Petitioner successfully negotiated with the agency to reduce the withholding percentage to 5%, and a revised notice of withholding was sent on December 9, 2010, accommodating petitioner by agreeing to reduce from 50% to 5% the rate at which it would withhold petitioner's Medicaid payments.

When petitioner learned on September 12, 2013 that OMIG intended to continue withholding Medicaid payments until it had collected the full $1,857,401, plus interest, rather than stopping when it reached the lower confidence limit, it commenced this proceeding pursuant to CPLR article 78, seeking an order prohibiting OMIG from collecting more than the lower confidence amount from its Medicaid billings. Although petitioner does not, and cannot, dispute OMIG's calculations of the overpayments, or that it failed to enter into a settlement or properly request a hearing to challenge the agency's findings, the petition inexplicably asserts that by failing to settle or obtain a hearing, petitioner became liable for repayment of only the lower confidence limit of the amount overpaid, $1,460,914. Petitioner argues that by seeking the full amount of the calculated overpayment, the agency is acting in a manner outside the scope of its authority.

There is no merit in petitioner's contention that it did not receive adequate notice that in the absence of a settlement or different determination after a hearing, OMIG would collect the full amount of the overpayment. Petitioner unquestionably understood the amount that OMIG intended to collect. Its own October 27, 2010 letter to an administrative law judge regarding its claimed right to a hearing notwithstanding its failure to make a proper request for one recognized the full amount of the calculated overpayment; the decision of the ALJ rejecting

petitioner's claim also recited the full amount that OMIG sought to recover from petitioner.

Had petitioner settled, it would be entitled to limit its liability to the lower amount; had it timely and properly sought a hearing, it could have challenged the amount that OMIG claims must be repaid, and possibly arrived at some other amount. However, petitioner neither agreed to the proposed settlement of the lower confidence limit within the indicated time frame, nor properly requested a hearing to challenge OMIG's findings. Importantly, in the absence of either a settlement or a determination at a hearing of some other overpayment amount, the final audit report becomes a final, enforceable determination of the agency, and its filing with the County Clerks gives it the "full force and effect of a judgment" (see Social Services Law § 145-a [2]). The amount petitioner is liable to repay is therefore the full amount of the overpayment as calculated by the agency (18 NYCRR 518.1 [b]). The inclusion in the final audit report of information regarding the withholding procedure that would be automatically instituted to collect the lower confidence limit amount if no settlement was reached does not support the argument that the agency has no right to recoup the full overpayment in the absence of a settlement or other determination after a hearing.

The majority, in reasoning that the agency must be limited to collecting the lower confidence limit amount, relies on the language of the two notices sent to petitioner regarding the agency's withholding of payments, in which the agency referenced the lower confidence limit amount and did not specify that the withholding would continue until the full overpayment amount was recouped. However, the notices were merely sent in compliance with controlling regulations in order to notify petitioner that the agency was about to begin withholding a percentage of Medicaid payments to which petitioner would otherwise be entitled; they did not alter the agency's entitlement to the full amount of the overpayment. The recitation of the lower confidence limit in the notices did not, either explicitly or implicitly, create any sort of waiver of the agency's claim to the full amount due; nor did it constrain the agency's entitlement to recoup the full amount of the overpayment by *any* available means.

It is true that the notices did not notify petitioner that OMIG intended to recover the full overpayment; the notices were drafted with the more limited purpose of notifying the Medicaid provider that in the absence of a settlement at the lower confidence limit, the agency would recoup the lower confidence

limit amount through the withholding process. The absence from the notices of reference to the full overpayment amount does not, however, preclude the agency from taking available steps to enforce its judgment to the full amount of the overpayment.

The final audit report sufficiently informed petitioner that if it did not settle or obtain a different result at a hearing, the full assessed overpayment would be due and owing. The withholding process, discussed in the final audit report and provided for in the withholding notices, did nothing to preclude OMIG from collecting an amount beyond the lower confidence limit. The wording of the withholding notices regarding when and how the automatic withholding process would be implemented cannot override or alter OMIG's entitlement to recoup the full overpayment. Although the notices reference only the lower confidence limit amount, they do not preclude OMIG from collecting the full assessed amount. Indeed, petitioner was specifically informed in the final audit report and its cover letter that the withholding process did not bar "any other remedy allowed by law" (*see* 18 NYCRR 518.7 [d]).

By concluding that OMIG is "statutorily barred" from collecting the full overpayment because of the language of its notice to petitioner (as required by regulations) that it would begin the process of recouping overpayments up to the lower confidence limit, the majority imposes limits on the agency that are not in the applicable laws and regulations. It relies on a strained and overly restrictive reading of the language of the final audit report to conclude that the agency's right to seek recoupment of the full overpayment is limited to circumstances in which a hearing is held. Indeed, that reading strangely puts the Medicaid provider who fails to either settle or properly request a hearing in the exact same position as the Medicaid provider who settles, and ignores the agency's right to a judgment for the full "amount found to be due and owing" in the absence of a settlement or hearing (*see* Social Services Law § 145-a [2]).

There is no support for petitioner's contention that OMIG agreed that petitioner's ultimate liability would be limited to the lower confidence limit amount. On the contrary, petitioner continually maintained that it did *not* intend to settle at the lower confidence limit, but rather sought to challenge the final report's findings on the merits. Petitioner's affirmative conduct was "entirely at odds with" the existence of an agreement (*see EMF Gen. Contr. Corp. v Bisbee*, 6 AD3d 45, 50 [1st Dept 2004], *lv denied* 3 NY3d 607 [2004]).

The motion court correctly concluded that OMIG has a rational basis for withholding payments until the full overpayment plus interest is satisfied. Relief under CPLR article 78 is therefore not warranted.