Incorporated Vil. of Freeport v Freeport Plaza W., LLC
2026 NY Slip Op 03906
June 18, 2026
Court of Appeals
Halligan, J.
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Incorporated Village of Freeport, Respondent,
v
Freeport Plaza West, LLC, Appellant.

Decided on June 18, 2026
No. 63

Steven J. Harfenist, for appellant.
Keith M. Corbett, for respondent.

Halligan, J.

[*1]
After the Village of Freeport and Freeport Plaza West, LLC ("FPW") entered into a contract to develop several parcels of land, the Village brought this action against FPW for breach of contract, alleging that it had failed to close on the transaction by the contractually required deadline. FPW answered and asserted a counterclaim for anticipatory breach of contract, but failed to file a notice of claim as required by CPLR 9802. Because the Appellate Division properly refused to apply equitable estoppel to excuse that failure here, we affirm.
I.
In March 2017, FPW agreed to purchase several parcels of land from the Village for development as a mixed use residential and commercial building site. The contract contained a clause stating that the closing "shall take place" 30 days after FPW received "all Required Approvals." In February 2018, the Village commenced this action for breach of contract, alleging that FPW had obtained all required approvals by November 16, 2017, but had "refused" to close within the required 30 days.
FPW answered in March 2018 and asserted a counterclaim for anticipatory breach of contract. FPW alleged that the Village had attempted to "force" it to "prematurely close on the transaction" and breached the contract by "refusing to allow for the filing of the necessary development documentation." It is undisputed that FPW did not file a notice of claim with the Village regarding this counterclaim. The Village answered the counterclaim and asserted several affirmative defenses, including that FPW "failed to perform all conditions precedent."
Discovery ensued, and over the next 17 months, the parties appeared before Supreme Court nine times. Trial was originally scheduled for October 28, 2019, but in September 2019 was adjourned to December 2019 for the parties to complete discovery.
On October 4, 2019, the Village moved to dismiss FPW's counterclaim for failure to timely file a notice of claim pursuant to CPLR 9802. In opposition, FPW argued that the Village should be equitably estopped from invoking the notice of claim requirement, contending that the Village had commenced the action and had actual knowledge of the contract dispute from which the counterclaim arose, but deliberately delayed raising the issue until the eve of trial, at which point the statutory limitation period on the counterclaim had expired. Supreme Court agreed, denied the Village's motion, and declined to enforce the notice of claim requirement. The court explained that throughout the course of the litigation — including multiple conferences on discovery disputes — the Village had failed to raise the notice of claim issue and so should be estopped from doing so now. The court further found that because FPW's "counterclaim ar[ose] out of the same occurrences . . . asserted in the [Village's] complaint," the Village "had every opportunity to investigate and defend . . . that it would have been afforded if a notice of claim had been filed" and thus was "far from prejudiced from the lack of a formal notice of claim."FN1
The Appellate Division reversed and granted the Village's motion to dismiss (see 206 AD3d 703 [2d Dept 2022]). The Court determined that the Village had litigated "to prosecute its own breach of contract claim," rather than "attempt[ing] to lull the defendant to sleep on its rights"; that its conduct was not "calculated to, or negligently did, mislead or discourage [FPW] from serving a timely notice of claim"; and that FPW had not "justifiably relied upon" the Village's actions (id. at 704 [internal quotation marks omitted]). Accordingly, the Court held that Supreme Court erred in applying estoppel against the Village (see id.).
This Court granted leave to appeal from a final stipulation to bring up for review the Appellate Division order (see 44 NY3d 904 [2025]).
II.
CPLR 9802 provides that "no action shall be maintained against [a] village upon or arising out of a contract of the village . . . unless a written verified claim shall have been filed with the village clerk within one year after the cause of action shall have accrued." Failure to do so "shall be a bar to any claim or action therefor against said village" (id.). This provision is one of several notice of claim statutes that apply to actions against government entities. For example, Town Law § 65 (3) applies to contract claims against towns; General Municipal Law § 50-e applies to tort claims against public corporations; and Education Law § 3813 applies to claims against school districts. We have long held that "compliance with these provisions is a condition precedent to be pleaded and proved by the one bringing suit" (Salesian Socy. v Village of Ellenville, 41 NY2d 521, 523 [1977]). We have also explained that a primary purpose of these statutes is to afford local governments "the opportunity to fully investigate and, if regarded as appropriate, to settle claims without the expense and hazards of litigation" (id. at 524).
As a general matter, "statutory requirements conditioning suit against a governmental entity must be strictly construed" because they "protect[] the public fisc" (Varsity Tr., Inc. v Board of Educ. of City of New York, 5 NY3d 532, 536 & n 2 [2005] [internal brackets omitted]) and are "allowed only by the State's waiver of sovereign immunity" (Dreger v New York State Thruway Auth., 81 NY2d 721, 724 [1992]). Where the text of a notice of claim statute "permits no exception," we have concluded that the Legislature intends its enforcement even if the government "had actual knowledge of the claim or failed to demonstrate actual prejudice" (Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 548-549 [1983]). And we have "repeatedly rejected . . . proposals to compromise the strict statutory notice of claim requirement" to avoid "uncertainty and vexatious disputes" (Varsity Tr., Inc., 5 NY3d at 536 [Rosenblatt, J.]), even where such requirements yield harsh results (see e.g. Camarella v East Irondequoit Cent. School Bd., 34 NY2d 139, 142 [1974] ["(W)e cannot but remark that in this case the harshness of (a notice of claim statute) is once again laid bare. But where the Legislature has decreed that, as a prerequisite to sue, a particular form of notice shall be conveyed with particular details to particular public officers, the courts lack the power to substitute something else."]).
FPW acknowledges that it failed to comply with CPLR 9802's notice of claim requirement but argues that the Village should be equitably estopped from raising that failure because it did not move to dismiss FPW's counterclaim on that basis until nearly a year and a half into the litigation. Equitable estoppel is not warranted here.
We have explained that equitable estoppel generally "is not applied against the government, as a matter of policy, because to do so could easily result in large scale public fraud" and "violate the doctrine of separation of powers" (Matter of E.F.S. Ventures Corp. v Foster, 71 NY2d 359, 370 [1988]). Thus, "[w]e have recognized that estoppel may be warranted in unusual factual situations to prevent injustice . . . but we have limited its use against government agencies to all but the rarest cases" (West Midtown Mgt. Group, Inc. v State of New N.Y., Dept. of Health, Off. of the Medicaid Inspector Gen., 31 NY3d 533, 542 [2018] [internal quotation marks omitted]).
Bender v New York City Health & Hosps. Corp. (38 NY2d 662 [1976]) was one of those rare cases. In Bender, new legislation had recently created the New York City Health and Hospitals Corporation and required plaintiffs to file a notice of claim with that entity rather than the city. After initially filing a notice of claim with the city, the plaintiffs moved for permission to file notice nunc pro tunc with the corporation, alleging they were "misled by the manner in which their claims were handled and by the inequity caused by the new statutory scheme" (id. at 665). We held that courts may equitably estop a government entity from seeking to dismiss an action based on failure to file a notice of claim "where a governmental subdivision acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes his position to his detriment or prejudice," and remitted the case for development of the factual record on various issues, including whether the new statute had been strictly applied by the city and whether the plaintiffs could have ascertained when the corporation commenced operations (see id. at 668-669). We explained that "[t]he equitable bar to a defense may arise by virtue of positive acts, or omissions where there was a duty to act," and that applying equitable estoppel to such situations ensures that notice of claim statutes "do not become 'a trap to catch the unwary or the ignorant' " (id. at 668, quoting Sweeney v City of New York, 225 NY 271, 273 [1919]). We later clarified, however, that Bender's holding was "addressed to an unusual factual situation, is of very limited application and should not be read as diminishing the vitality of the general rule that the doctrine of estoppel is not applicable to agencies of the State acting in a governmental capacity" (Matter of Hamptons Hosp. & Med. Ctr. v Moore, 52 NY2d 88, 93 n 1 [1981]; see also E.F.S. Ventures Corp., 71 NY2d at 370 [noting that Hamptons "narrow(ed) the breadth of Bender"]). And in the years since Bender, the Appellate Division has frequently declined to estop government defendants from invoking notice of claim requirements absent a showing of wrongful or misleading conduct (see e.g. Martinez v City of New York, 104 AD3d 407, 408 [1st Dept 2013]; Khela v City of New York, 91 AD3d 912, 914 [2d Dept 2012]; Wilson v City of Buffalo, 298 AD2d 994, 996 [4th Dept 2002]).
Here, we conclude that the Village did not engage in wrongful or misleading conduct warranting the application of equitable estoppel. As the Appellate Division correctly determined, participation in litigation, without more, does not constitute action calculated to mislead or discourage a party from filing a notice of claim (see 206 AD3d at 704 [collecting cases]). That holds true here, where the Village was pressing its own breach of contract claim and therefore had every reason to participate in discovery and related court conferences, independent of FPW's counterclaim. Moreover, the Village's answer to the counterclaim put FPW on notice that it was raising FPW's "fail[ure] to perform all conditions precedent" as an affirmative defense, and compliance with a notice of [*2]claim statute such as CPLR 9802 "is a condition precedent" to an action against a municipality (Salesian Socy., 41 NY2d at 523).FN2
The dissent focuses on various discovery "logjams" and the Village's failure to comply with a practice rule, but fails to explain how or why FPW would have reasonably relied on this conduct in failing to file a notice of claim (see dissenting op at 7-10). Notice of claim statutes are longstanding procedural requirements in municipal litigation (see generally Siegel & Connors, New York Prac, § 32 [6th ed. 2024]) and compliance is "not overly burdensome" (Varsity Tr., 5 NY3d at 537). We do not condone the Village's litigation conduct, but nothing prevented FPW, represented by experienced legal counsel, from filing a notice of claim. To the extent FPW relied on the Village's conduct to their detriment, such reliance was unreasonable.
FPW relies heavily on Salesian, where we declined to enforce a notice of claim requirement because of the "peculiar circumstances" presented there (41 NY2d at 522). But Salesian rested on principles of waiver as well as equitable estoppel (see id. at 524 [noting that "ordinarily" notice of claim requirements "may not be waived by (government) officials" but explaining that "this is not such a case"]). In any event, its circumstances were highly unusual and factually distinct. There, the municipality did not raise any notice of claim defense "in the entire six years between the start of suit and the opening of trial," during trial, or on appeal (id.). Instead, it was the Appellate Division that raised the issue, sua sponte dismissing the plaintiff's claim on that basis (see id.). Citing the municipality's failure to ever raise the issue, as well as its agreement to a stipulation that expressly defined the issues at trial (to the exclusion of this point), we determined that the municipality was "precluded . . . from further relying on the fact that compliance with the notice requirements was neither pleaded nor proved" (id. at 525). We further noted that "[c]onsiderations of judicial economy" counseled against dismissal based on the "narrow issue of notice alone," because the case involved a continuing trespass and the plaintiff therefore could have filed a notice of claim after dismissal and commenced a new action (id. at 526). This case presents none of those considerations.
As for the Appellate Division cases relied upon by FPW that apply estoppel because a municipality had actual notice of the claim and suffered no prejudice by the party's failure to file a notice of claim (see Town of Smithtown v Jet Paper Stock Corp., 179 AD2d 634 [2d Dept 1992]; Lebanon Val. Landscaping, Inc. v Town of Nassau, 192 AD2d 902 [3d Dept 1993]), we have previously instructed that notice of claim requirements should be strictly construed even where the government "had actual knowledge of the claim or failed to demonstrate actual prejudice" (Varsity Tr., Inc., 5 NY3d at 536). We decline to expand the settled standard for applying equitable estoppel against the government in notice of claim situations to account for actual notice or lack of prejudice.
Finally, we see no reason to excuse FPW's failure to file a notice of claim simply because it is a counterclaim. The text of CPLR 9802 applies broadly to claims and counterclaims alike: "no action shall be maintained against the village upon or arising out of a contract of the village unless a written verified claim shall have been filed with the village clerk within one year after the cause of action shall have accrued." This language, "[o]n its face, . . . makes no exception to the notice rule for contract disputes already in litigation" (Varsity Tr., 5 NY3d at 536 [applying Education Law § 3813]). We have explained that where the Legislature "has spoken unequivocally" that filing a notice of claim is required, as it has done here, compliance with the statute should be strictly enforced to effectuate the Legislature's intent (Parochial Bus Sys., Inc., 60 NY2d at 548-549; see also Thomann v City of Rochester, 256 NY 165, 172 [1931] [where "(t)he Legislature has said that a particular form of notice . . . shall be a prerequisite to the right to sue . . . (t)he courts are without power to substitute something else"]). [*3]FPW's contention that filing a notice of claim was unnecessary because its counterclaim was made in response to the Village's breach of contract claim finds no support in the statutory language, and amounts to a policy dispute with the Legislature.FN3
Accordingly, the order of the Appellate Division brought up for review upon appeal from the parties' stipulation should be affirmed, with costs.
Rivera, J. (dissenting):

The Village of Freeport (the Village) sued Freeport Plaza West (FPW) for breach of contract and FPW counterclaimed, alleging that the Village anticipatorily breached by filing the lawsuit. After 18 months of intensive litigation, mere weeks before trial, the Village moved to dismiss the counterclaim on the grounds that FPW failed to file a notice of claim as to the anticipatory breach allegation. The Village filed its motion to dismiss without prior notice to the court at any of the over ten court conferences the Village appeared at and in contravention of the Commercial Division's pre-motion practice conference rules. Under these circumstances, where the Village misled Supreme Court, the counterclaim mirrors the original claim and arises from the fact of the litigation itself, and dismissal of the counterclaim does not further the statutory purposes of affording the Village an opportunity for pre-litigation investigation and settlement, the Village is estopped from asserting the notice of claim requirement as a complete defense to FPW's counterclaim.
I would reverse the Appellate Division order and permit FPW to pursue its counterclaim.
I.
The Village and FPW entered into a land purchase contract that required FPW to close the land deal within 30 days of a triggering event. The Village sued FPW for breach of contract for failing to comply with that deadline. FPW answered and asserted a counterclaim, alleging the Village anticipatorily breached the contract by filing its lawsuit against FPW. This was, in effect, a compulsory counterclaim as it was a "claim for relief" that would "impair the rights or interests established in the first action"; in other words, FPW did not have the option to "remain silent" on its anticipatory breach claim in the Village's affirmative action without waiving its anticipatory breach claim in a subsequent action (see Henry Modell & Co., Inc. v Minister, Elders & Deacons of Ref. Prot. Dutch Church of City of N. Y., 68 NY2d 456, 462 & n 2 [1986]; see also Kaufman v Eli Lilly & Co., 65 NY2d 449, 455-456 [*4][1985] [collateral estoppel is triggered where the a prior action would necessarily decides issues in a second action and the first action provides a "full and fair opportunity" to litigate the same issues]).
For the next 18 months, the parties litigated the matter, including completing discovery and attending 10 pre-trial conferences. At no time did the Village indicate that it intended to move to dismiss FPW's counterclaim for its failure to file a notice of claim. At the final conference, weeks before trial, the Village again failed to mention its plan to file a motion to dismiss, even when the court asked if there were any outstanding pre-trial matters. Six days later, and only seven weeks before trial, the Village filed its motion to dismiss the counterclaim pursuant to under CPLR 3211 (a) (7) based on FPW's failure to file a notice of claim. In doing so, the Village deviated from its prior practice of providing notice for its motion, and in this case, failed to comply with the Commercial Division's notice of motion rule, which remained in full effect as the parties were still in the final stage of discovery (see Rules of Commercial Div of Sup Ct [22 NYCRR 202.70 (g)] rule 24 [requiring parties to meet-and-confer prior to the initiation of motion practice, and affirming trial court's discretion to manage pre-motion matters]), and the rules of the Commercial Division justice managing this dispute, which similarly required an application prior to commencement of motion practice.
Supreme Court denied the motion, relying on Salesian Society, Inc. v Village of Ellenville (41 NY2d 521, 522 [1977]) and Town of Smithtown v Jet Paper Stock Corp. (179 AD2d 634 [2d Dept 1992]; see NYSCEF Doc No. 61, Decision + Order at 1-3, Nov. 13, 2019, Sup Ct, Nassau County, index No. 602227/2018 [hereinafter Order]). The court concluded that this case presented "peculiar circumstances" warranting denial of the motion to dismiss because: the Village had initiated the lawsuit—FPW's counterclaim arose out of the same nucleus of operative facts as those asserted in the complaint—a complaint the Village replied to, and has "vigorously defended" against; and the Village had "every opportunity to investigate and defend against this claim that it would have been afforded if a notice of claim had been filed." (Order at 2). Indeed, the court was persuaded by the Village's failure to "cite[ ] to any case" wherein a court allowed a municipality to "avail itself of the court system by commencing an action, . . . fully litigate that action for over a year and defend against a counterclaim arising out of the same facts, and then virtually on the eve of trial" raise the failure to file the notice of claim (id.). The Appellate Division reversed, concluding that the Village's litigation conduct was not grounds to estop the Village from raising FPW's failure to comply with CPLR 9802's notice of claim requirement (206 AD3d 703, 704-705 [2d Dept 2022]).
We granted leave to appeal, and the majority now affirms by rejecting application of equitable estoppel to the unique facts of this case. That is the wrong course on the record before us.
II.
CPLR 9802 provides, in relevant part, that "no action shall be maintained against the village upon or arising out of a contract of the village unless" a "written verified claim [has] been filed with the village clerk within one year after the cause of action shall have accrued [and] a notice of claim shall have been made and served in compliance with [General Municipal Law § 50 (e)]." The claimant must wait 40 days from the date the claim is filed with the village clerk before commencement of suit but must commence an action no later than 18 months from accrual of the claim.
" 'The only legitimate purpose served by the notice' is prompt investigation and preservation of evidence of the facts and circumstances out of which claims arise" (Beary v City of Rye, 44 NY2d 398, 412 [1978], quoting 21st Annual Report of NY Judicial Conference, 1976, p 302; see also Fourth Ocean Putnam Corp. v Interstate Wrecking Co., 66 NY2d 38, 42 [1985]; Salesian, 41 NY2d at 523-525). Filing the notice avoids "the expense and hazards of litigation" (Salesian, 41 NY2d at 524 [collecting cases]). Claimants enjoy the benefit of "earlier processing and consideration of their claims" (id.), while municipalities avoid the costs and inconveniences of defending frivolous actions (Schwartz v City of New York, 250 NY 332, 335-336 [1929]).
Generally, notice of claim statutes are strictly construed and result in dismissal of the unnoticed claim (see Murray v LeRoy Cent. School Dist., 67 NY2d 775, 776 [1986]). However, a municipality cannot use this statutory defense as a "sword" rather "than a shield" (Smithtown, 179 AD2d at 634; cf. DeLeonibus v Scognamillo, 183 AD2d 697, 698 [2d Dept 1992] [notice-of-claim statutes "not meant as a sword to cut down honest claims, but merely as a shield to protect municipalities against spurious ones"], citing Schwartz, 250 NY at 335). Municipalities may be estopped from asserting the notice of claim requirement as a defense by their conduct "where . . . [the municipality] acts or comports itself wrongfully or negligently, inducing reliance by a party who is entitled to rely and who changes [their] position to [their] detriment or prejudice" (Bender v New York City Health & Hosps. Corp., 38 NY2d [*5]662, 668 [1976]). These barriers "insure that statutes like [CPLR 9802] do not become 'a trap to catch the unwary or the ignorant' " (Bender, 38 NY2d at 668 quoting Sweeney v City of New York, 225 NY 271, 273 [1919]).
For example, in Salesian, the Court concluded that under the "peculiar circumstances" of that case, the notice of claim requirement in the predecessor statute to CPLR 9802 did not bar the plaintiff's recovery (see 41 NY2d at 522, 524-525). The Court explained that the Village of Ellenville initiated the lawsuit, vigorously litigated it for six years, entered a pre-trial stipulation two years into the litigation indicating the parties' intent to resolve the case on the merits, and yet Ellenville never raised the notice of claim defense. More recently, in West Midtown Management Group, Inc. v State, we reaffirmed the general rule "that estoppel may be warranted in unusual factual situations to prevent injustice . . . but we have limited its use against government agencies to all but the rarest cases" (31 NY3d 533, 542 [2018] [citations and internal quotation marks omitted"]). But rare does not mean never, as confirmed by the trial courts that have applied the doctrine judiciously, after careful consideration of the facts and the municipality's conduct (see Steimel, 965 F Supp at 372-375; cf. East Coast Resources, LLC v Town of Hempstead, 707 F Supp 2d 401, 407-409 [ED NY 2010] ["Since the Town planned to pursue claims under the same contract as (plaintiff) — but just so happened to have lost the race to the courthouse — its reliance upon the notice of claim requirement is more in the nature of a sword than a shield"]; Frink v Town of Armenia, 91 Misc 2d 491, 494-495 [Dutchess County Ct 1977] [rejecting application of notice of claim in similar circumstances to avoid "needless reverence for form over substance"]).FN1
III.
Supreme Court adjudged that under the " 'peculiar circumstances' " of this case, where the Village's conduct amounted to a "waiver and [an] estoppel[,]" equity should lie to prevent dismissal of FPW's claim (see Order at 2, citing Salesian, 41 NY2d at 522). "[E]stoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought[,]" while waiver, on the other hand, "requires no more than the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable" (see Nassau Tr. Co. v Montrose Concrete Products Corp., 56 NY2d 175 [1982]). As the trial court correctly identified, a confluence of factors justifies the application of equitable estoppel to bar the Village from raising the notice of claim requirement in defense of FPW's counterclaim.
The Village acted both wrongfully and negligently in ways that induced FPW's detrimental reliance (see Bender, 38 NY2d at 668). Like Ellenville in Salesian, the Village initiated this lawsuit, engaged in litigation in preparation for a trial on the merits, and made no mention of a motion to dismiss at any conference, including in the weeks before trial and despite the court's inquiries as to the existence of outstanding pretrial matters (see 41 NY2d at 524-525). And prior to the filing of the motion, the Village gave every indication to the court and defendant that it intended to proceed to a trial on the merits of both contract claims (NYSCEF Doc No. 21, Preliminary Conference Stipulation and Order at 1, 5, Apr. 27, 2018, Sup Ct, Nassau County, index No. 602227/2018 [identifying the nature of the action as "breach of contract and counterclaim for breach of contract(,)" mandating completion of discovery by May 2019, and setting an October 28, 2019 trial date]). Yet, from the outset of the discovery period, various "discovery disputes" arose between the parties, requiring Supreme Court to "guide[ ] the parties through various discovery issues" (see Order at 1-2).
Rather than completing discovery by May 2019, FPW reported to Supreme Court that the Village was refusing to produce party witnesses for deposition, including the "counsel involved in the negotiations at the heart of the case" (see NYSCEF Doc No. 22, Harfenist Ltr, May 17, 2019). These "logjams" continued through the summer, [*6]until the court determined it was appropriate to appoint a Special Master to resolve the Village's continued refusal to produce witnesses during a "lengthy discovery conference . . . attempt[ing] to break through various logjams" (see Order at 1-2 [noting adjournment of trial caused by these "discovery issues"]; see also NYSCEF Doc No. 30, Harfenist Ltr at 1, Aug. 1, 2019 [describing prejudice if the Village refuses to produce witnesses, which were supposed to be produced in July, prior to an early September pre-trial conference]; NYSCEF Doc No. 34, Order Appt'g Special Master, Sep. 11, 2019). The Village appears to have finally relented when the court granted FPW's application to file a motion to compel the deposition of two witnesses, fix a date for the Village to complete expert disclosures, and impose monetary sanctions against the Village for the "abject lack of cooperation with respect to the" depositions (NYSCEF Doc No. 75-1, So-Ordered Harfenist Ltr, Jan. 8, 2020; see also NYSCEF Doc Nos. 90-92 [notices of appearance for counsel representing missing deponents]). The harm from this conduct runs directly to FPW: FPW, induced by the Village's "vigorous[ ]" litigation on the merits for 18 months on both contract claims, allowed the notice of claim window to close in reasonable reliance on the Village's litigation conduct (see Salesian, 41 NY2d at 524-525).
Moreover, the Village also acted negligently by wasting the resources of the trial court and ignoring plainly applicable rules of practice (see Steimel, 965 F Supp at 370-371, 373-374 [rejecting notice of claim following counsel's invocation at the "thirteenth hour" where "(a)ll the discovery ha(s) gone on . . . (the parties had joint pretrial orders" and the Village had "used the time from the Court and the services of the court, prepared this case for trial"]). In contravention of the Commercial Division's rule 24, and Supreme Court's rules and practice, the Village gave no written notice in advance of its intended motion to the Court and FPW.FN2 If that were not enough, the Village's general assertion that FPW "failed to perform all conditions precedent," a defense that could equally be read to refer to the contract conditions the Village had sued upon, failed to comply with CPLR 3015 (a), which requires that a condition precedent defense be pleaded "specifically and with particularity." That pleading deficiency was contrary to controlling Appellate Division caselaw (see One W. Bank, FSB v Rosenberg, 189 AD3d 1600, 1602 [2d Dept 2020] ["(T)he defendant's sixth affirmative defense generally and conclusorily alleged that the 'plaintiff has failed to comply with all conditions precedent to commencement of this action.' This Court has held such language to be insufficient to raise the issue of the plaintiff's compliance with either statutory or contractual notice requirements"]).FN3 The majority ignores that this further violation of the pleading requirements is the type of "trap to catch the unwary or ignorant" our precedent has warned against (Bender, 38 NY2d at 668, citing Sweeney, 225 NY at 273).
The majority's adherence to formalism elides the manifest injustice of dismissing FPW's counterclaim for failure to file a notice of claim. New York courts have repeatedly rejected fixing a notice-of-claim provision as an uncritical "technical barrier[,]" especially where, as here, 'its application would be inequitable and unreasonable" (see Adrian v Town of Yorktown, 341 Fed Appx 699, 701 [2d Cir 2009], quoting Lebanon Valley Landscaping, Inc. v Town of Nassau, 192 AD2d 902 [3d Dept 1993]; see also Matter of Hartsdale Fire Dist. v Eastland Const., Inc., 65 AD3d 1345, 1346 [2d Dept 2009] ["The petitioner's conduct in moving to compel arbitration . . . and preparing for arbitration, constituted misleading conduct which estopped the petitioner from raising the notice of claim requirement"]; Local 456 Intl. Bhd. of Teamsters v Town of Cortlandt, 68 Misc 2d 645, 654 [Sup Ct, Westchester [*7]County 1971] ["(T)he history of this litigation prevents the town from raising th(e) defense (that no notice of claim was ever filed). To permit the town to contract to pay, to subsequently meet and promise to make payment to the union trust fund, and to bring an action to determine the rights of the parties and then to raise this defense after the complaint was filed by it as one of a group of joint and several plaintiffs, would be unconscionable"]).
IV.
There is another significant reason why FPW should be allowed to pursue its counterclaim. Enforcement of the notice of claim requirement to FPW's counterclaim is ill-suited to this litigation posture and promotes none of the legislative objectives of notice of claim requirements.
The Village seeks to procedurally avoid a compulsory counterclaim that arises from the Village's filing of this lawsuit. The Village's breach of contract claim and FPW's anticipatory breach counterclaim are legally and factually mirror images of one another—both arise from the due diligence and closing clauses of the contract. It is hornbook law that notwithstanding our State's "permissive" counterclaim rule, "the doctrine of collateral estoppel (issue preclusion) can invade a second action, brought now on the previously withheld counterclaim, and, with findings from the earlier action, dictate its result." (Siegel, New York Practice § 452 [6th ed 2024] [noting that our application of estoppel as "a kind of waiver doctrine . . . is an erratic and perilous thing in a practice that presumes to label all counterclaims permissive"]; see also Modell, 68 NY2d at 462 & n 2 ["Our permissive counterclaim rule . . . does not . . . permit a party to remain silent in the first action and then bring a second one on the basis of a preexisting claim for relief that would impair the rights or interests established in the first action"]; Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485 [1979] [collateral estoppel applies where the party "had been afforded a full and fair opportunity to contest the decision said to be dispositive of the present controversy" and there is proof that the issues litigated "in the prior action (are) identical, and thus decisive, of th(ose) in issue in the current action"]). FPW's counterclaim would be barred in a future action because the "meaning and effect of the contract [would] have already been adjudicated" through the Village's action (Schuylkill Fuel Corp. v B. & C. Nieberg Realty Corp., 250 NY 304, 306 [1929]). In other words, FPW had to bring its claim immediately, or risk waiver. Thus, the Village's wielding of the notice of claim provision here will permanently deprive FPW of its opportunity to sue for anticipatory breach of the contact.
Significantly, unlike in the usual case where a municipality is sued and has no prior notice of the claim, dismissal of FPW's counterclaim serves no statutory purpose. The parties are not in a pre-filing posture where notice provides an opportunity for investigation of the claim and possible settlement to avoid future litigation expenses. Indeed, in this post-filing context, given that FPW's claim is based on the contract and the fact of the Village's filing, and the Village has no factual matters to investigate and no evidence to preserve, it has not suffered prejudice by FPW's failure to file a notice of claim. And just as in Salesian, this litigation has been "vigorously contested by both sides throughout"; both parties were represented by "diligent counsel[,]" who pressed each of their clients' positions adeptly (see 41 NY2d at 524-525 [noting it is "significant that these events occurred in a litigation context" because "(t) he exposure of the dispute between the parties to the formal and open processes of an on-going lawsuit . . . provided a strong guarantee that the village's tactic of not contesting the case on the question of notice, but instead directly on the basic underlying issues, was one adopted by its representatives in good faith"]). As Judge Rosenblatt, then sitting in County Court, counseled in Frink v Town of Armenia, notice-of-claim requirements exist to protect municipalities from surprise, not to arm them with a procedural weapon against parties they themselves have dragged into court on the very same contract (see 91 Misc 2d at 493-495). Where, as here, the municipality was "privy to the proceedings from the very beginning," the notice requirement "loses all but technical significance," and enforcing it would amount to "needless reverence for form over substance" (id. at 495-496). Neither the majority nor the Village contend otherwise.
Further, dismissal of the counterclaim did not terminate the litigation—which at least would have reduced some litigation expenses and perhaps weighed in favor of a different outcome here.FN4 Instead, because the parties [*8]were set for trial on the breach of contract claim, dismissal ensured that the Village escaped liability for a potentially meritorious anticipatory breach claim. That unjust outcome can easily be avoided by application of estoppel to the Village.
Application of the notice of claim requirement also results in a waste of party and judicial resources. Under the majority's strict application of CPLR 9802 FPW's only path to preserving its counterclaim would have been to file a notice of claim with the village clerk after receiving the complaint (the very act that precipitated the anticipatory breach claim), serve an answer without the counterclaim, wait the mandatory 40 days, and only then move by leave of court to amend the answer to add the counterclaim.FN5 Technical compliance does not promote judicial economy or the ends of justice. CPLR 9802 does not require this result.
The majority's affirmance of the dismissal of the counterclaim rewards the Village's use of the notice of claim requirement as a sword and not a shield (City of Syracuse v Utica Mut. Ins. Co., 83 AD2d 116, 122 [4th Dept 1981], affd 61 NY2d 691 [1984]); and sanctions its use as "a trap to catch the unwary or the ignorant" (Bender, 38 NY2d at 668, quoting Sweeney, 225 NY at 273). Long ago we rejected this undiscerning adherence to strict compliance untempered by equity.
I dissent.
Order brought up for review upon appeal from the parties' stipulation affirmed, with costs.
Opinion by Judge Halligan. Judges Garcia, Singas, Cannataro and Troutman concur. Judge Rivera dissents in an opinion, in which Chief Judge Wilson concurs.
Decided June 18, 2026

Footnotes

Footnote 1
Although Supreme Court noted that the Village violated Commercial Division Rule 24, it did not rely on this point in concluding that equitable estoppel should be applied (but see dissenting op at 3, 9).

Footnote 2
The dissent points to an Appellate Division decision holding that a "general[ ] and conclusor[y]" allegation of failure to comply with all conditions precedent was "insufficient to raise the issue of the plaintiff's compliance with either statutory or contractual notice requirements" (dissenting op at 9-10, quoting One W. Bank, FSB v Rosenberg, 189 AD3d 1600, 1602 [2d Dept 2020]). The upshot of that ruling was that in light of the conclusory language, "a cognizable affirmative defense" had not been asserted and thus "the plaintiff was not required to address those issues as part of its prima facie burden in moving for summary judgment" (Rosenberg, 189 AD3d at 1602-1603). The question before us, though, is not whether FPW was required to show compliance with the notice of claim requirement to obtain summary judgment, but whether the Village induced reliance by FPW through wrongful or negligent conduct.

Footnote 3
Contrary to the dissent's assertion, there was a simple and expedient path for FPW to assert its counterclaim and comply with the notice of claim requirement (see dissenting op at 13). Even if FPW's time to answer would have expired before the conclusion of CPLR 9802's 40-day waiting period for filing a claim, all FPW had to do was file a notice of claim and request a stipulation extending its time to answer (see Siegel & Connors, supra, § 231). If for some reason the Village refused this request, FPW could have moved by order to show cause for an extension (see CPLR 3012 [d]; Siegel & Connors, supra, § 231).

Footnote 1
I agree with the majority, as a general matter, that notice of claim provisions must be strictly construed, and that enforcement of the rule may lead to harsh results (see majority op at 4-5). However, as the majority acknowledges, that rule is subject to an exception and a municipality that acts wrongfully or negligently is estopped from invoking the failure to file a timely notice of claim as a defense against the claim (see id. at 6-7, citing Bender, 38 NY2d at 665-668). I part ways with the majority because I conclude that this case falls within this exception.

Footnote 2
The majority asserts that Supreme Court did not rely on the violation of Commercial Division rule 24 (see majority op at n 1). That is a misreading of Supreme Court's opinion, which cited rule 24 as but one example of the Village's wrongful actions that misled the court and FPW to believe that the parties were committed to resolving their respective claims on the merits (see Order at 2). Indeed, the violation of the rule was one of the many "peculiar circumstances" identified by Supreme Court supporting an exception to the notice of claim requirement (id. at 2, citing Salesian, 41 NY2d at 522).

Footnote 3
The majority distinguishes One West Bank on the ground that the case involved summary judgment (see majority op at n 2). That procedural difference is of no moment; the relevant point is that the Village failed to comply with the pleading specificity requirement of rule 3015(a), which, in turn, is a factor in the estoppel analysis.

Footnote 4
The Village ultimately discontinued its own affirmative claims almost seven years after filing, stating that it "d[id] not see any reason to put on a case as it is our position that all triable issues have been resolved" (NYSCEF Doc No. 179, Cohn ltr, Oct. 28, 2024, Sup Ct, Nassau County, index No. 602227/2018).

Footnote 5
The majority claims that FPW could have requested a stipulation from the Village to extend its time to respond or otherwise move Supreme Court to provide an extension (see majority op at n 3). Setting aside that the Village's obstructionist conduct suggests it is unlikely they would agree to such a stipulation in this acrimonious dispute, the majority ignores that its "solution" adds to the litigation costs incurred by FPW due to the Village's actions.